STATE OF NORTH CAROLINA v. PERRIE DYON SIMPSON

No. 316A89

(Filed 22 April 1992)

1. **Criminal Law § 1352 (NCI4th) — murder — McKoy error — polling of jury — not sufficient to establish harmless error**

    There was prejudicial *McKoy* error in a capital sentencing hearing where the jury was given instructions requiring them to be unanimous in finding mitigating circumstances and there was evidence from which one or more jurors could have found one or more of the twenty-five rejected mitigating circumstances. Moreover, the polling of the jury was insufficiently exact to establish that the error was harmless beyond a reasonable doubt.

    **Am Jur 2d, Homicide § 548; Trial §§ 1759, 1760.**

    **Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

2. **Jury § 7.9 (NCI3d) — murder — jury selection — knowledge of prior death penalty — excusal not mandatory**

    In an appeal from a capital sentencing proceeding which was reversed on other grounds, the Supreme Court declined to adopt a *per se* rule that any juror with knowledge that a previous jury returned a recommendation of death for the same murder must be excused for cause. Where, as here, the trial court establishes through individual, sequestered, searching voir dire examination that the prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory.

    **Am Jur 2d, Jury §§ 267, 276.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *DeRamus*, *J.*, at the 15 May 1989 Special Session of Superior Court, ROCKINGHAM County, upon defendant's plea of guilty of first-degree murder. Heard in the Supreme Court 11 February 1992.

STATE v. SIMPSON

[331 N.C. 267 (1992)]

*Lacy H. Thornburg, Attorney General, by Joan Herre Byers, Special Deputy Attorney General, for the State.*

*James R. Glover and Ann B. Petersen for defendant appellant.*

WHICHARD, Justice.

Defendant pled guilty to the first-degree murder of Jean Earnest Darter, robbery with a dangerous weapon, and conspiracy to commit murder. After his guilty pleas were entered, a jury was empaneled for the purpose of determining defendant's punishment for the first-degree murder. N.C.G.S. § 15A-2000(a) (1988). Upon the jury's recommendation, the trial court sentenced defendant to death for the first-degree murder. Defendant previously appealed to this Court as of right on the judgment and sentence of death, and was allowed to bypass the Court of Appeals as to the judgments and sentences for the additional offenses.

On defendant's first appeal, this Court found no error in the judgments and sentences for armed robbery and conspiracy to commit murder. It found prejudicial error in the capital sentencing proceeding, however, and remanded the case to the trial court for resentencing on the first-degree murder. *State v. Simpson*, 320 N.C. 313, 357 S.E.2d 332 (1987), *cert. denied*, 485 U.S. 963, 99 L. Ed. 2d 430 (1988). At the new sentencing proceeding, the jury unanimously found two aggravating circumstances. Of the twenty-nine mitigating circumstances submitted, the jury unanimously found only four. Upon the jury's recommendation that defendant be sentenced to death, the trial court entered the judgment from which defendant now appeals.

The facts of the murder, which are not pertinent to the issues on this appeal, are summarized in the Court's prior opinion. *See id.* Additional facts relevant to this appeal are discussed below.

[1] Subsequent to the sentencing hearing at issue, the United States Supreme Court held unconstitutional under the Eighth and Fourteenth Amendments of the United States Constitution jury instructions in capital proceedings which require jurors to be unanimous in the finding of mitigating circumstances. *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). Our review of the record reveals, and the State concedes, that the trial court here so instructed the jury. Specifically, the trial court instructed the jury to write "yes" after a mitigating circumstance if the jury

found unanimously that it existed and to write "no" if the jury did not unanimously find it to exist. The State further concedes that it cannot argue successfully that this error was harmless because there is evidence from which one or more jurors could have found one or more of the twenty-five rejected mitigating circumstances.

For example, there was substantial evidence to support the mitigating circumstances that defendant committed the murder while he was under the influence of mental or emotional disturbance, and that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired. N.C.G.S. § 15A-2000(f)(2), -2000(f)(6) (1988). Both circumstances were supported by the uncontradicted testimony of Dr. Claudia Coleman, a psychologist, that defendant's ability to conform his conduct to the requirements of the law was impaired because he was suffering from emotional disturbance, attention deficit/hyperactivity disorder, and a "not otherwise specified" or "mixed" personality disorder. The trial court peremptorily instructed the jury that all the evidence tended to show the existence of these two statutory circumstances; yet, the jury answered "no" as to both. Given the substantial evidence in support of these and other mitigating circumstances, we cannot conclude beyond a reasonable doubt that the erroneous unanimity instruction did not preclude one or more jurors from considering one or more circumstances in mitigation. *State v. Barnes*, 330 N.C. 104, 108, 408 S.E.2d 843, 845 (1991).

The State also grants that the polling of the jury was insufficiently exact to establish that the *McKoy* error was harmless beyond a reasonable doubt. It acknowledges that the polling fell somewhere between the type of polling found sufficient to show harmless error in *State v. Laws*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, --- U.S. ---, 116 L. Ed. 2d 174, *reh'g denied*, --- U.S. ---, 116 L. Ed. 2d 648 (1991), and the type found insufficient to make such a showing in *State v. Lloyd*, 329 N.C. 662, 407 S.E.2d 218 (1991). In *Laws*, the trial court asked the jury foreman if the answers on the verdict form reflected the "unanimous verdict of the jury." The trial court also had the clerk read each answer on the verdict form to each individual juror and had the clerk ask each juror, "Are these your answers and your recommendation as to punishment?" The foreman and the individual jurors answered all inquiries in the affirmative. Under those circumstances, the Court concluded that the *McKoy* error had not precluded any juror from

considering mitigating evidence. *Laws*, 328 N.C. at 554-55, 402 S.E.2d at 576-77. In *Lloyd*, however, the trial court asked questions only of the foreman and the jury as a whole. Only as to the final sentencing decision did the trial court address the individual jurors. Further, the questions asked and the answers given did not reveal whether the jury's rejection of the mitigating circumstances was unanimous. Under those circumstances, the Court held that the jury poll was not sufficiently specific to render the *McKoy* error harmless. *Lloyd*, 329 N.C. at 665-67, 407 S.E.2d at 220-21.

Here, the trial court first asked the jury foreman whether each answer on the verdict form was "the jury's answer." The transcript then reveals the following:

THE COURT THEN ASKED THE REMAINING JURORS THE FOLLOWING QUESTIONS:

COURT: You have heard the questions and the answers indicated by your foreman her[e] in open court? Are those your answers as a juror and is that your recommendation as to the death penalty as a juror? And do you still consent thereto?

To the foregoing questions all the jurors answered in the affirmative.

COURT: Members of the jury, for your answer to issues as indicated by your foreman here in open court, are those your answers so say you all?

JURORS: Yes sir.

COURT: And for your recommendation as to punishment, your foreman has returned the verdict of the jury being that the jury unanimously recommends that the defendant, Perrie Dyon Simpson be sentenced to death, is that your recommendation, so say you all?

JURORS: Yes sir.

The State suggested in its brief and in oral arguments that the above transcription reflects a failure on the part of the court reporter to record individual colloquies between each juror and the trial court. It acknowledged that "this omission makes the polling insufficiently exact to prove any *McKoy* error harmless beyond a reasonable doubt." We agree that the polling was "not specific enough to distinguish between unanimous and nonunanimous 'no' verdicts on

the unfound mitigating circumstances." *Lloyd*, 329 N.C. at 667, 407 S.E.2d at 221. Because we cannot conclude beyond a reasonable doubt that the *McKoy* error was harmless, we vacate the sentence of death and order a new capital sentencing proceeding.

[2] Because it is likely to recur upon resentencing, we also address defendant's issue of whether a prospective juror who knows that a prior jury recommended the death penalty for the same murder should be excused for cause. The trial court denied defendant's motions to excuse for cause several prospective jurors who knew defendant had been sentenced to death for Darter's murder. Three had formed an opinion about the appropriateness of the sentence recommended in the first sentencing hearing.

The parties uncovered the jurors' prior knowledge and opinions during individual, sequestered *voir dire* examinations by the trial court to explore pretrial exposure or bias. The trial court, the State, and defense counsel closely and extensively questioned each prospective juror on the effect the prior knowledge or opinion would have on the juror's ability to make an independent decision. All stated that they would be able to put aside that prior knowledge and/or opinion and render an impartial, fair decision based only on the evidence presented and the law as explained by the trial court. In most instances, the trial court instructed the prospective juror that the previous proceeding had been legally flawed and should have no bearing on the disposition at the current hearing. In one instance, the trial court instructed the juror that she should not discuss her prior knowledge with other jurors during jury deliberations.

We join other jurisdictions in declining to impose a *per se* rule that any juror with knowledge that a previous jury returned a recommendation of death for the same murder must be excused for cause. *See, e.g., Giles v. State*, 554 So. 2d 1073, 1079-80 (Ala. Crim. App. 1984) (jurors with such knowledge not automatically excluded), *judgment aff'd in part, rev'd in part on other grounds*, 554 So. 2d 1089 (Ala. 1987); *Turner v. Commonwealth*, 234 Va. 543, 547-49, 364 S.E.2d 483, 485-86 (whether a juror can "stand indifferent" is basically a factual question within discretion of trial court), *cert. denied*, 486 U.S. 1017, 100 L. Ed. 2d 218 (1988). We stress, however, the importance of "searching questioning of prospective jurors . . . to screen out those with fixed opinions" as to the appropriate penalty. *Nebraska Press Ass'n v. Stuart*, 427

U.S. 539, 564, 49 L. Ed. 2d 683, 700 (1976). Where, as here, the trial court establishes through individual, sequestered, searching *voir dire* examination that the prospective juror can disregard prior knowledge and impressions, follow the trial court's instructions on the law, and render an impartial, independent decision based on the evidence, excusal is not mandatory. *See Mu'Min v. Virginia,* --- U.S. ---, ---, 114 L. Ed. 2d 493, 509 (relevant question in trial preceded by extensive pretrial publicity is not whether jurors remember the case but whether they have such fixed opinions that they cannot judge defendant impartially), *reh'g denied,* --- U. S. ---, 115 L. Ed. 2d 1097 (1991); *Bundy v. Dugger,* 850 F.2d 1402, 1425-27, *reh'g denied,* 859 F.2d 928 (11th Cir. 1988) (upholding denial of defendant's challenge for cause of prospective juror who knew defendant had been sentenced to death for other murders where juror stated he would follow the law, presume defendant's innocence, and base his decision as to guilt and penalty on the evidence), *cert. denied,* 488 U.S. 1034, 102 L. Ed. 2d 980 (1989); *State v. Bell,* 302 S.C. 18, 24, 393 S.E.2d 364, 367-68 (jurors who knew defendant had been sentenced to death for a different murder could serve if they stated they could set aside their opinions and base their decisions on the evidence), *cert. denied,* --- U.S. ---, 112 L. Ed. 2d 182 (1990); *State v. Corbett,* 309 N.C. 382, 390, 395, 307 S.E.2d 139, 145, 147 (1983) (prospective juror who states opinion on disposition of case can serve if it is established that he can "lay aside" his opinion and render verdict on the evidence).

Death sentence vacated. Remanded for new capital sentencing proceeding.