41 F.3d 794
 NEW YORK STATE NATIONAL ORGANIZATION FOR WOMEN; New York
City Chapter of the National Organization for Women;
National Organization for Women; Religious Coalition for
Abortion Rights--New York Metropolitan Area; New York State
National Abortion Rights Action League; Planned Parenthood
of New York City, Inc.; Eastern Women's Center, Inc.;
Planned Parenthood Clinic (Bronx); Planned Parenthood
Clinic (Brooklyn); Planned Parenthood Margaret Sanger
Clinic (Manhattan); Ob-Gyn Pavilion; The Center for
Reproductive and Sexual Health; VIP Medical Associates;
Bill Baird Institute (Suffolk); Bill Baird Institute
(Nassau); Dr. Thomas J. Mullin; Bill Baird; Reverend
Beatrice Blair; Rabbi Dennis Math; Reverend Donald Morlan;
Pro-Choice Coalition, Plaintiffs-Appellees,
and
The City of New York, Intervenor-Appellee,
and
United States of America, Creditor-Appellee,
v.
Randall A. TERRY; Operation Rescue; Reverend James P.
Lisante; Thomas Herlihy; John Doe(s); Jane Doe(s), the
last two being fictitious Names, the real names of said
defendants being presently unknown to plaintiffs, said
fictitious names being intended to designate organizations
or persons who are members of defendant
organizations, and others acting in concert with any of the
defendants who are engaging in, or intend to engage in, the
conduct complained of herein, Defendants,
Randall A. Terry; Operation Rescue; and Thomas Herlihy,
Defendants-Appellants,
Bernard Nathanson, Respondent,
Jesse Lee; Joseph Foreman; Michael McMonagle; Jeff White;
Florence Talluto; Michael LaPenna; Adelle Nathanson;
Reverend Robert Pearson; Bistate Operation Rescue Network;
and Christopher Slattery, Respondents-Appellants,
A. Lawrence Washburn, Jr., Counsel-Appellant.
 Nos. 1427, 1552, 1553,
Dockets 90-6187, 91-6011, 91-6029.
 United States Court of Appeals,
Second Circuit.
 Argued May 20, 1991.
Decided April 13, 1992.
Vacated March 29, 1993.
Reinstated July 2, 1993.
Vacated Aug. 3, 1994.
Decided Dec. 2, 1994.
 
 Joseph P. Secola, New Milford, CT (McCarthy & Secola, P.C., New Milford, CT, Michael P. Tierney, A. Lawrence Washburn, Jr., Karin M. Burke, Legal Center for Defense of Life, New York City, William P. Harrington, Bleakley, Platt & Schmidt, White Plains, NY, John F. Sweeney, Gabriel P. Kralik, Morgan & Finnegan, New York City, Walter T. Clark, Jr., Walter T. Clark, III, Mary N. Clark, Clark & Clark, New Rochelle, NY, of counsel), for defendants-appellants and respondents-appellants.
 Kim J. Landsman, New York City, David Cole, Washington, DC (James M. Bergin, Morrison & Foerster, New York City, Center for Constitutional Rights, Washington, DC, Ruth Jones, Deborah Ellis, NOW Legal Defense and Education Fund, New York City, of counsel), for plaintiffs-appellees.
 Hillary Weisman, Asst. Corp. Counsel of the City of New York, New York City, for plaintiff-intervenor.
 Before: KEARSE, MAHONEY, and SNEED,* Circuit Judges.
 PER CURIAM:
 
 
 1
 We initially decided this appeal in New York State National Organization for Women v. Terry, 961 F.2d 390 (2d Cir.1992) ("NOW I "), by affirming most of the judgments of civil contempt from which this appeal was initially taken. See id. at 401. The Supreme Court granted certiorari, and vacated and remanded for further consideration in light of Bray v. Alexandria Women's Health Clinic, --- U.S. ----, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). Pearson v. Planned Parenthood Margaret Sanger Clinic, --- U.S. ----, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). We then reinstated our initial judgment, directing the parties to address any applications for relief in light of Bray to the district court in the first instance. New York State National Organization for Women v. Terry, 996 F.2d 1351 (per curiam) (2d Cir.1993).
 
 
 2
 An appeal was again taken, and the Supreme Court again vacated our judgment and remanded, this time for reconsideration in light of International Union, Mine Workers of America v. Bagwell, --- U.S. ----, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Pearson v. Planned Parenthood Margaret Sanger Clinic, --- U.S. ----, 114 S.Ct. 2776, 129 L.Ed.2d 888 (1994). We then requested, and have reviewed, letter briefs from the parties regarding this latest remand. We now vacate and remand those determinations of the district court that were affirmed in NOW I.
 
 
 3
 In Bagwell, the Court "address[ed] whether contempt fines levied against a union for violations of a labor injunction [were] coercive civil fines, or [were] criminal fines that constitutionally could be imposed only through a jury trial." --- U.S. at ----, 114 S.Ct. at 2555. The injunction was issued during a labor dispute. It prohibited the participating union and its members "from, among other things, obstructing ingress and egress to company facilities, throwing objects at and physically threatening company employees, placing tire-damaging 'jackrocks' on roads used by company vehicles, and picketing with more than a specified number of people at designated sites." Id. The state court that issued the injunction subsequently announced that it would "fine the union $100,000 for any future violent breach of the injunction and $20,000 for any future nonviolent infraction." Id. Pursuant to this provision, and after holding seven subsequent contempt hearings without a jury for which the parties conducted discovery, at which they introduced evidence and called and cross-examined witnesses, and at which contumacious acts were required to be proved beyond a reasonable doubt, the state court found the union in contempt for more than 400 separate violations of the injunction and levied over $64,000,000 in fines against the union, of which $52,000,000 remained at issue before the Court. Id. at ----, 114 S.Ct. at 2555-56.
 
 
 4
 The Court reversed, ruling that the union was entitled to a criminal jury trial before the fines could be imposed. Id. at ----, 114 S.Ct. at 2563. In doing so, the Court stated:
 
 
 5
 We ... decline to conclude that the mere fact that the sanctions were announced in advance rendered them coercive and civil as a matter of constitutional law.
 
 
 6
 Other considerations convince us that the fines challenged here are criminal. The union's sanctionable conduct did not occur in the court's presence or otherwise implicate the court's ability to maintain order and adjudicate the proceedings before it. Nor did the union's contumacy involve simple, affirmative acts, such as the paradigmatic civil contempts examined in Gompers [v. Bucks Stove and Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911) ]. Instead, the Virginia trial court levied contempt fines for widespread, ongoing, out-of-court violations of a complex injunction. In so doing, the court effectively policed petitioners' compliance with an entire code of conduct that the court itself had imposed. The union's contumacy lasted many months and spanned a substantial portion of the State. The fines assessed were serious, totalling over $52,000,000. Under such circumstances, disinterested factfinding and even-handed adjudication were essential, and petitioners were entitled to a criminal jury trial.
 
 
 7
 Id. at ----, 114 S.Ct. at 2562 (footnote omitted).
 
 
 8
 The Bagwell ruling has recently been applied in a case that is virtually indistinguishable from the litigation that is before this court. In National Organization for Women v. Operation Rescue, 37 F.3d 646 (D.C.Cir.1994), an injunction barred abortion protesters from interfering with access to abortion clinics, and "established a schedule of escalating prospective fines for continued violations of the injunction, payable to the clinics." Id. at 649. The district court subsequently imposed noncompensatory fines of $145,000 upon various defendants for violating the injunction. The defendants appealed, and the District of Columbia Court of Appeals vacated the noncompensatory fines and remanded, id. at 661, ruling that "the protections of criminal procedure are necessary under the principles enunciated in Bagwell, --- U.S. at ----, 114 S.Ct. at 2561." Id. 37 F.3d at 660. The court noted that the amount of the fines was considerably less in Operation Rescue than in Bagwell, id., and that the provisions of the Bagwell injunction were considerably more complex than those of the Operation Rescue decree, id. at 661, but concluded that the amount of the Operation Rescue fines and the mandated governance of out-of-court conduct nonetheless sufficed to require "the protection of criminal procedure" mandated by Bagwell. Id.
 
 
 9
 In light of Bagwell and Operation Rescue, we conclude that the noncompensatory fines imposed by the district court in this case, concededly without the benefit of a jury trial and related protections of criminal procedure, must be vacated. Opposing this result, plaintiffs-appellees contend that Bagwell involved a more complex injunctive "code of conduct," correspondingly more complicated factfinding, and considerably more onerous financial penalties than are presented in the instant case. It is nonetheless true that, as in Bagwell, the punished conduct did not occur in the court's presence and involved something akin to "an entire code of conduct that the court itself had imposed." Bagwell, --- U.S. at ----, 114 S.Ct. at 2562; see also Operation Rescue, 37 F.3d at 661 ("the out-of-court acts prohibited by the court's order here fall closer to the Bagwell end of the spectrum"). Further, the noncompensatory fines totalling $500,000 in this case can hardly be considered de minimis, even if not in the Bagwell league. The fines imposed here are roughly three times the noncompensatory fines for which Operation Rescue required Bagwell procedures. The fact that Operation Rescue and its adherents had notice of the injunctions in this case, and would not have been subjected to contempt penalties if they had obeyed them, does not seem germane to the question what procedures are required, in light of Bagwell, to impose such penalties.
 
 
 10
 The legal fees related to the vacated contempt sanctions are correspondingly vacated. The district court must also reconsider the legal fees awarded pursuant to 42 U.S.C. Sec. 1988. See Bray, --- U.S. at ----, 113 S.Ct. at 767-68 (because respondents were not entitled to relief under 42 U.S.C. Sec. 1985(3), also not entitled to attorney fees and costs under 42 U.S.C. Sec. 1988); Operation Rescue, 37 F.3d at 653 (same).
 
 
 11
 In accordance with the foregoing, those determinations of the district court that were affirmed in NOW I are vacated, and the case is remanded for further proceedings consistent with Bray and Bagwell. The parties shall bear their own costs.
 
 
 
 *
 The Honorable Joseph T. Sneed, of the United States Circuit Court for the Ninth Circuit, sitting by designation