NEW YORK STATE NATIONAL OR-GANIZATION FOR WOMEN, et al., Plaintiffs,

City of New York, Plaintiff–Intervenor,

and

United State of America, Judgment Creditor,

v.

Randall TERRY, et al., Defendants.

No. 88 Civ. 3071(RJW).

United States District Court, S.D. New York.

April 26, 2000.

.Martha F. Davis, Yolanda Wu, NOW Legal Defense and Education Fund, New York City, Barbara Olshansky, Center for Constitutional Rights, New York City, James Bergin, Morrison & Foerster L.L.P., New York City, for plaintiffs.

Joseph P. Secola, McCarthy & Secola, P.C., New Milford, Connecticut, John F. Sweeney, Michael O. Cummings, Morgan & Finnegan, L.L.P., New York City, A. Lawrence Washburn, New York City, Gabriel P. Kralik, Schering–Plough Corporation, Kenelworth, New Jersey, for defendants.

## OPINION

WARD, District Judge.

Plaintiffs have moved for a supplemental award of attorneys' fees pursuant to 42 U.S.C. § 1988, Fed.R.Civ.P. 54, and Rule 83.9 of the Local Civil Rules of this Court. For the reasons hereinafter stated, plaintiffs' motion is granted.

## BACKGROUND

The Court assumes familiarity with the underlying facts of this case which are fully reported in *New York State NOW v. Terry,* 159 F.3d 86 (2d Cir.1998). However, in order to fully understand plaintiffs' claims, a brief review of the several stages of the litigation is necessary.

Plaintiffs brought this action in 1988 seeking declaratory and injunctive relief to restrain defendants from blocking access to medical facilities that provide abortions. The complaint alleged eight separate causes of action: violations of New York Civil Rights Law § 40–c and New York Executive Law § 296; public nuisance; interference with the business of medical facilities; trespass; infliction of emotional harm; tortious harassment; false imprisonment; conspiracy to deny women seeking abortion or family planning services the equal protection of the laws and equal privileges and immunities in violation of 42 U.S.C. § 1985(3).

In 1989, plaintiffs moved for summary judgment on their § 1985(3) and New York law claims, and for a permanent injunction enjoining defendants from blocking abortion clinics. The Court granted plaintiffs' motion and issued a permanent injunction which established a schedule of prospective coercive civil sanctions, payable to plaintiff NOW, in the case of future violations. *See New York State NOW v. Terry,* 704 F.Supp. 1247, 1258–64 (S.D.N.Y.1989). The Second Circuit modified the sanctions to make them payable to the court rather than to plaintiff NOW and affirmed. *New York State NOW v. Terry,* 886 F.2d 1339 (2d Cir.1989). The Supreme

Court denied certiorari. *Terry v. New York State NOW,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). These proceedings are referred to in this decision as *"Terry* I." [1]

In 1990, the Court ruled that defendants had violated the permanent injunction as well as a temporary restraining order and preliminary injunction that had previously been imposed. The Court adjudged defendants to be in contempt and fined them in amounts ranging from $25,000 to $100,000. *See New York State NOW v. Terry,* 732 F.Supp. 388, 398–409 (S.D.N.Y.1990). The Second Circuit affirmed the contempt judgments against all defendants and all but two non-party respondents and counsel. *See New York State NOW v. Terry,* 961 F.2d 390, 401 (2d Cir.1992). The Supreme Court granted defendants' petition for certiorari, vacated, and remanded *Terry* for reconsideration in light of *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). *See Pearson v. Planned Parenthood Margaret Sanger Clinic,* 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). This stage of the litigation will be referred to as *"Terry* II." [2]

On remand, the Second Circuit reinstated the contempt fines, stating that all applications for relief in light of *Bray* should be decided in the first instance by the district court. *See New York State NOW v. Terry,* 996 F.2d 1351, 1352 (2d Cir.1993). Another appeal was taken by defendants. The Supreme Court again granted certiorari and remanded the case, this time for reconsideration in light of *International Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). *See Pearson v. Planned Parenthood Margaret Sanger Clinic,* 512 U.S.

1249, 114 S.Ct. 2776, 129 L.Ed.2d 888 (1994). These proceedings will be referred to as *"Terry* III." [3]

The second time the case was remanded to the Second Circuit, the court vacated the contempt judgments and remanded the case to the district court for reconsideration in light of *Bray* and *Bagwell. See New York State NOW v. Terry,* 41 F.3d 794, 796–97 (2d Cir.1994). These events will be referred to throughout this decision as *"Terry* IV."

On remand to the district court, plaintiffs moved to have the Court's original injunction modified to comply with *Bagwell* and to have the contempt sanctions reinstated. The Court granted plaintiffs' motion, the Second Circuit affirmed, and the Supreme Court denied defendants' petition for certiorari. *See New York State NOW v. Terry,* 952 F.Supp. 1033, 1039–1043 (S.D.N.Y.1997); *New York State NOW v. Terry,* 159 F.3d 86, 98 (2d Cir.1998); *Pearson v. Planned Parenthood Margaret Sanger Clinic,* 527 U.S. 1003, 119 S.Ct. 2336, 144 L.Ed.2d 234 (1999). These proceedings will be referred to as *"Terry* V."

## DISCUSSION

### I. Plaintiffs are Entitled to Attorneys' Fees as Prevailing Parties

The Civil Rights Attorney's Fees Award Act of 1976 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). This provision includes the discretion to award plaintiffs fees for their attorneys' successful appellate efforts. *Hastings v. Maine–Endwell Cent. School Dist.,* 676 F.2d 893, 896–97 (2d Cir.1982).

---

**1.** Plaintiffs have already been awarded attorneys' fees for *Terry* I and therefore are not seeking compensation for those proceedings here.

**2.** Inasmuch as plaintiffs can no longer provide contemporaneous attorney time records for the proceedings in *Terry* II, they do not seek fees for those proceedings.

**3.** Since plaintiffs cannot provide contemporaneous time records for the proceedings before the Second Circuit, the only fees they seek with respect to *Terry* III are for their opposition to defendants' petition for certiorari.

While a court's decision to award attorney's fees is discretionary, the Second Circuit has noted that successful civil rights litigants should recover reasonable fees unless "special circumstances" render such an award unjust. *DiFilippo v.. Morizio*, 759 F.2d 231, 234 (2d Cir.1985) (citing S.Rep. No. 1011, 94th Cong., 2d Sess. 4, reprinted in 1976 U.S.Code Cong. & Ad. News 5908, 5912).

■ In deciding whether to award attorney's fees, the court must first determine whether plaintiffs are "prevailing parties." The Supreme Court has stated that "'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–279 (1st Cir.1978)).

■ Furthermore, a plaintiff who is ultimately successful may be able to recover reasonable attorney's fees for interim stages of the litigation at which plaintiff did not prevail. Where plaintiff has obtained relief on the merits, the Second Circuit has stated that "she should not necessarily be denied fees for hours expended on interim stages of the case in which a ruling was made in favor of the party against whom she ultimately prevailed." *Gierlinger v. Gleason*, 160 F.3d 858, 880 (2d Cir.1998). In such a case, the Court of Appeals has suggested, "the proper inquiry is not whether [plaintiff's] efforts on appeal itself were successful, but rather whether, in light of the circumstances of the litigation as a whole, those efforts were reasonable." *Id.* at 880.

4. Defendants contend that plaintiffs waived their right to seek attorneys' fees by not requesting them in their motion to modify the injunction and reinstate contempt sanctions filed in *Terry* V. As detailed in the declaration of James M. Bergin, plaintiffs' counsel requested an extension of time to file their motion for supplemental fees and costs, and that request was granted. *See* Declaration of

## A. Plaintiffs are Prevailing Parties with Respect to the Litigation of this Court's Initial Fee Award

■ This Court has already found plaintiffs to be prevailing parties on their underlying § 1985 claims and has previously awarded them attorneys' fees for the costs they incurred in *Terry* I. *See NOW v. Terry*, 737 F.Supp. 1350, 1367 (S.D.N.Y. 1990). Plaintiffs now seek additional attorneys' fees for the litigation involved in defending that fee award during *Terry* III, IV, and V.[4]

After the Second Circuit affirmed this Court's initial grant of fees, *see NOW v. Terry*, 961 F.2d 390, 401 (2d Cir.1990), the Supreme Court vacated and remanded the case for reconsideration in light of *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). *See Pearson v. Planned Parenthood Margaret Sanger Clinic*, 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993). In *Bray*, the Supreme Court held that women seeking abortions did not constitute a qualifying class under § 1985(3) and that the goal of preventing abortions did not amount to invidiously discriminatory animus toward women. *Id.* at 269–274, 113 S.Ct. 753. Since plaintiffs were not entitled to relief under § 1985(3), the Supreme Court further held that they could not recover attorneys' fees and costs under 42 U.S.C. § 1988. *Id.* at 285, 113 S.Ct. 753.

While this Court's decision granting plaintiffs summary judgment on their § 1985(3) claims was made final prior to *Bray* and, therefore, was unaffected by the Supreme Court's ruling, plaintiffs' fee award was still on direct review and could

James M. Bergin in Support of Plaintiffs' Motion for a Supplemental Award of Attorneys' Fees and Expenses, dated September 29, 1999 ¶ 3–7. The present motion was filed within the time frame fixed by the Court upon granting plaintiffs' request for an extension. Therefore, defendants' waiver argument must fail.

potentially be affected by retroactive application of the *Bray* decision.

Rather than address *Bray*'s effect on *Terry* II itself, however, the Second Circuit reinstated the Court's fee award and held that the application of *Bray* should be decided in the first instance by the district court. *See New York State NOW v. Terry,* 996 F.2d 1351, 1352 (2d Cir.1993).

On remand, this Court held that plaintiffs were still entitled to their initial award of attorneys' fees since *Bray* did not affect plaintiffs' status as prevailing parties on their underlying § 1985(3) claims. Finding no special circumstances to bar plaintiffs from recovering their litigation costs, the Court reinstated the attorneys' fees awarded in *Terry* I. *See New York State NOW v. Terry,* 952 F.Supp. 1033, 1045–46 (S.D.N.Y.1997). The Second Circuit affirmed the reinstatement of fees and the Supreme Court denied certiorari. *See New York State NOW v. Terry,* 159 F.3d 86, 98 (1998); *Pearson v. Planned Parenthood Margaret Sanger Clinic,* 527 U.S. 1003, 119 S.Ct. 2336, 144 L.Ed.2d 234 (1999).

Since *Bray* had no effect on this Court's fee award, plaintiffs are not only prevailing parties with respect to their underlying § 1985 claim, but are also prevailing parties with respect to the litigation arising out of their claim for attorneys' fees. Given that defendants have set forth no special circumstance that would preclude plaintiffs from recovering the fees associated with this additional litigation, plaintiffs are entitled to a supplemental award.

### B. Plaintiffs are also Prevailing Parties with Respect to the Litigation of this Court's Initial Imposition of Contempt Sanctions

Plaintiffs have already been awarded attorneys' fees for the costs they incurred in bringing their original motion for contempt sanctions. *See NOW v. Terry,* 732 F.Supp. 388, 409 (S.D.N.Y.1990). They now seek an additional fee award as prevailing parties in the litigation concerning the sanctions that followed in *Terry* III, IV, and V.[5]

In *Terry* I, following repeated willful violations of this Court's order prohibiting defendants from blocking access to abortion facilities, plaintiffs filed a motion for coercive civil sanctions. The Court granted plaintiffs' motion and the Second Circuit affirmed. *See New York State NOW v. Terry,* 732 F.Supp. 388, 398 (S.D.N.Y. 1990); *New York State NOW v. Terry,* 961 F.2d 390, 401 (2d Cir.1992). Defendants petitioned for certiorari, arguing that the sanctions were criminal rather than civil and that *Terry* presented the same question as that in *International Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), which was then before the Supreme Court.

The Supreme Court granted certiorari, vacated the decision of the Second Circuit, and remanded for reconsideration in light of *Bagwell. See Pearson v. Planned Parenthood Margaret Sanger Clinic,* 512 U.S. 1249, 114 S.Ct. 2776, 129 L.Ed.2d 888 (1994). In *Bagwell,* the Supreme Court held that unconditional prospective fines were criminal in nature and required procedural protections beyond those afforded

---

**5.** Plaintiffs argue in the alternative that they are entitled to attorneys' fees as the parties who brought and litigated the contempt motion. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for a Supplemental Award of Attorneys' Fees and Expenses, dated Sept. 29, 1999, at 11–13 (citing Rule 83.9 of the Local Civil Rules ("A reasonable counsel fee, necessitated by the contempt proceedings, may be included as an item of damage"); *Weitzman v. Stein,* 98 F.3d 717, 719 (2d Cir.1996) ("[T]o survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt.")). Since the Court finds that plaintiffs are entitled to reasonable fees as prevailing parties on their contempt motion, the Court does not reach this alternative ground.

in civil contempt proceedings. 512 U.S. at 837–838, 114 S.Ct. 2552. On remand, the Second Circuit considered *Bagwell*'s application to *Terry* and found that the sanctions originally imposed by this Court were criminal rather than civil. The court, therefore, vacated the contempt fines and remanded the case. *See New York State NOW v. Terry,* 41 F.3d 794, 796–97 (2d Cir.1994).

Following the Second Circuit's remand, plaintiffs moved to have this Court's original injunction modified to provide defendants with an opportunity to purge themselves of the contempt as contemplated by *Bagwell,* and to have the sanctions reinstated. Plaintiffs' motion was granted and this Court's decision was affirmed by the Second Circuit. *See New York State NOW v. Terry,* 952 F.Supp. 1033, 1039–1043 (S.D.N.Y.1997); *New York State NOW v. Terry,* 159 F.3d 86, 98 (2d Cir. 1998). The Supreme Court denied defendants' petition for certiorari making this Court's imposition of civil contempt sanctions final. *See Pearson v. Planned Parenthood Margaret Sanger Clinic,* 527 U.S. 1003, 119 S.Ct. 2336, 144 L.Ed.2d 234 (1999).

While defendants do not dispute that plaintiffs ultimately prevailed on their motion for contempt sanctions, they nevertheless contest several aspects of plaintiffs' fee request.

### C. Plaintiffs' Fee Request for Work Performed in their Opposition to Defendants' Second Petition for Certiorari in *Terry* III and Letter Brief to the Second Circuit in *Terry* IV

■ Defendants' first argument is that plaintiffs should not recover fees for their unsuccessful opposition to defendants' second petition for certiorari in *Terry* III or for their failed letter brief to the Second Circuit in *Terry* IV because plaintiffs erroneously insisted at these stages of the case that the prospective contempt sanctions originally imposed by this Court were civil rather than criminal.

The mere fact that plaintiffs were unsuccessful in opposing defendants' petition for certiorari and did not succeed on remand to the Second Circuit, however, does not preclude plaintiffs from receiving an additional award of attorneys' fees. As stated above, the proper inquiry for determining whether a plaintiff should be awarded fees for interim stages of the litigation at which plaintiff was not the prevailing party is "whether in light of the circumstances of the litigation as a whole, [plaintiff's] efforts were reasonable." *Gierlinger,* 160 F.3d at 880.

Turning first to plaintiffs' opposition to defendants' petition for certiorari, the Court finds that plaintiffs' efforts at this stage of the litigation were reasonable. Plaintiffs argued in their opposition papers that the prospective contempt fines issued by the Court were civil rather than criminal in nature and that an adverse ruling in *Bagwell* would have no effect on *Terry* since *Bagwell* was distinguishable. The assertion that the sanctions were civil rather than criminal did not contradict any well established legal precedent at the time. As the Supreme Court in *Bagwell* itself conceded, the distinction between civil and criminal contempt fines had been "somewhat elusive." 512 U.S. at 830, 114 S.Ct. 2552. Moreover, the position assumed by plaintiffs was the same as that adopted by this Court in imposing the original contempt sanctions and the Second Circuit in upholding those sanctions.

As for the argument that *Bagwell* was distinguishable, this too was reasonable. *Bagwell* involved a more complex injunction and much greater fines than were imposed by *Terry.* Given the murky distinction in the law between civil and criminal contempt, plaintiffs fairly argued that these facts distinguished the sanctions imposed in *Bagwell* from the fines at issue here. As such, plaintiffs' efforts in opposing defendants' petition for certiorari were reasonable.

Similarly, the Court finds that plaintiffs' efforts on remand to the Second Circuit

were reasonable. Consistent with their position in opposition to defendants' petition for certiorari, plaintiffs claimed on remand that the adverse decision in *Bagwell* did not require a finding that the prospective fines imposed by this Court were criminal because *Bagwell* was distinguishable from *Terry*. While this Court may not believe that *Bagwell* was so easily distinguishable, plaintiffs' argument was nevertheless a reasonable one. The Supreme Court in *Bagwell* did not create a bright line rule for determining when prospective contempt sanctions were criminal, but rather, based its holding on the specific facts of the case before it. Furthermore, *Bagwell* had not yet been applied in other cases or interpreted by other courts. Plaintiffs were, therefore, forced to evaluate the scope and application of the *Bagwell* decision without much guidance. As such, the Court does not believe that plaintiffs were unreasonable in maintaining that the prospective fines levied in this case were civil and did not require additional procedural protections.

■ Buttressing the Court's finding that plaintiffs' position on remand was reasonable is the fact that plaintiffs acknowledged *Bagwell*'s potential application to *Terry* I and argued in the alternative for a modification of the Court's injunction. In the event the Second Circuit found the injunction in *Terry* defective, plaintiffs requested that the Court modify the injunction by including a purge provision that would bring the injunction into compliance with *Bagwell*. While this alternative was rejected by the Second Circuit, the modification suggested was ultimately adopted by this Court and upheld on appeal.

In light of the unsettled and rapidly developing nature of this area of law, the Court finds that plaintiffs were reasonable in both opposing defendants' petition for certiorari and in trying to distinguish *Bagwell* on remand.

6. Moreover, awarding plaintiffs fees for their

### D. Plaintiffs' Fee Request for Work Performed on their Motion to Modify the Injunction and Reinstate Contempt Fines in *Terry* V

Defendants also argue that plaintiffs should not be compensated for any of the hours they allegedly devoted to their motion to modify the injunction and reinstate contempt sanctions in *Terry* I. Defendants do not dispute that plaintiffs are prevailing parties with respect to this motion. Nevertheless, it is defendants' position that plaintiffs should not be compensated for their work because they already received fees for their original contempt motion, in which they improperly sought the imposition of criminal sanctions.

As the Court understands it, defendants' argument is not so much that plaintiffs should not be compensated for their second motion for sanctions but rather that they should never have been compensated for their first one. The Court's fee award for plaintiffs' work on their first motion, however, has already been affirmed by the Second Circuit and the Supreme Court has denied certiorari. That award is therefore final. Moreover, the mere fact that the position assumed by plaintiffs in their first motion was subsequently invalidated does not necessarily suggest that plaintiffs should not be compensated for their later efforts. Rather, plaintiffs may be entitled to reasonable attorneys' fees as the prevailing party even where they have not succeeded at interim stages of the litigation so long as their efforts were reasonable. *Gierlinger,* 160 F.3d at 880.

Given the "elusive" distinction between criminal and civil contempt discussed above, the Court finds that plaintiffs were reasonable in arguing that the sanctions sought were civil and therefore did not require additional procedural protections. Since plaintiffs were reasonable in their efforts, plaintiffs were properly awarded fees for their prosecution of their original motion. As defendants have provided no other basis for denying plaintiffs' supplemental request, the Court finds that plaintiffs are entitled to additional fees in connection with their subsequent request for sanctions on which they prevailed.[6]

successful motion to modify the Court's in-

## II. Reasonableness of the Fees Requested

■ In calculating the fees to be awarded to plaintiffs, this Court must multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Gierlinger v. Gleason,* 160 F.3d 858, 876 (2d Cir.1998). The Court will exclude from that calculation any hours that it finds to be "excessive, redundant, or otherwise unnecessary." *Id.* (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The rates to be used in calculating plaintiffs' fee award are "the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* at 882 (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). Furthermore, in order to compensate plaintiffs where there is a delay in payment, the Court should apply current rather than historic hourly rates. *Id.* at 882 (citing *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).

### A. Reasonableness of the Hours Requested[7]

■ Defendants take issue with plaintiffs' fee request for 200 hours devoted to their opposition to defendants' appeal to the Second Circuit in *Terry V.* It is defendants' position that 200 hours is excessive since plaintiffs' brief was merely a modified version of their motion to reinstate sanctions. The Court finds that the hours expended by plaintiffs' attorneys preparing their opposition to defendants' appeal were reasonable.

Plaintiffs were required to brief new questions of law regarding the scope of the *Bray* and *Bagwell* decisions, defend the Court's modification of the injunction and reinstatement of sanctions without much guidance from other courts interpreting the new case law, and address defendants' various arguments. Counsels' preparation required extensive review of a lengthy record and careful research of complicated legal issues. Moreover, counsel were required to spend additional time preparing for oral argument. While it is true that some of the arguments dealt with on appeal had already been raised below, the Court nevertheless finds that the hours expended were reasonable.[8]

### B. Reasonable Rates

The rates requested by plaintiffs are based on the fees currently charged by Morrison & Foerster for the attorneys who have participated in this case, or for attorneys with comparable experience.[9]

junction and for reinstatement of contempt sanctions is not duplicative of this Court's previous award. In their motion for reinstatement, plaintiffs were required to address the application of new Supreme Court precedent to the injunction at issue in this case and to craft a modification of the sanctions to comply with the new precedent. As such, the Court sees no reason for refusing to award plaintiffs reasonable attorneys' fees for their efforts in bringing this motion.

**7.** Plaintiffs seek reimbursement for 111.75 hours of work performed by Martha Davis, Director of the NOW Legal Defense and Education Fund (NOW LDEF), 40.10 hours of work performed by Yolanda S. Wu, staff attorney at NOW LDEF, 115.50 hours of work performed by Barbara J. Olshansky, Assistant Legal Director of the Center for Constitutional Rights, 493.95 hours of work performed by James Bergin, a partner at Morrison & Foer-

ster, 51.50 hours of work performed by Kim Landsman, a former partner at Morrison & Foerster, 71.50 hours of work performed by Eileen Hershenov, a former associate at Morrison & Foerster, 193.75 hours of work performed by Jamie Levitt, an associate at Morrison & Foerster, and 49.0 hours of work performed by Robert Murphy, another associate at Morrison & Foerster.

**8.** The Court has considered the remainder of defendants' arguments and finds them to be without merit.

**9.** Plaintiffs request the following rates for the attorneys who have worked on this case: for Mr. Landsman, $375 per hour; for Mr. Bergin, $335 per hour; for Ms. Hershenov, $325 per hour; for Ms. Levitt, $315 per hour; for Mr. Murphy, $325 per hour; for Ms. Davis, $335 per hour; for Ms. Wu, $275 per hour; and for Ms. Olshansky, $300 per hour.

The rates requested for Mr. Bergin, Ms. Levitt and Mr. Murphy are the actual amounts currently charged by Morrison & Foerster. The requested rates for Ms. Landsman and Ms. Hershenov are based on the rates that these attorneys would bill at this time if they were still with the firm. For Ms. Davis, Ms. Wu, and Ms. Olshansky, the rates requested are comparable to those that would be charged by Morrison & Foerster for attorneys at their levels of seniority and expertise.

Defendants note that these requests reflect the rates that the attorneys charge in their current positions, which in many cases differ from the positions they occupied while working on this case. For example, defendants note that Mr. Bergin seeks compensation at partner billing rates for all of the legal services he performed in connection with this case from 1993 to the present. However, Mr. Bergin was not made a partner until 1997. As such, defendants contend he should not be compensated at the partner billing rate for legal services performed before 1997.

The Court agrees that plaintiffs' attorneys are not entitled to compensation based on their current positions. Instead, each attorney should receive fees based on the average of his or her level of experience over the course of the litigation.[10] Plaintiffs are therefore directed to settle a judgment supported by affidavits setting forth each attorney's average level of experience for the period during which he or she provided legal services in connection with this case and specifying the prevailing current billing rates that correspond to those average levels of experience.

### III. Plaintiffs are Entitled to Reasonable Expenses

Plaintiffs have requested reimbursement for $14,417.73 in expenses incurred for copying, telephone, messenger and express mail services. Defendants object that plaintiffs have not adequately detailed $13,021.63 of those expenses which are attributed to Morrison & Foerster's out of pocket expenses. In response, plaintiffs have filed a supplemental declaration from Ms. Wu explaining that on occasion Morrison & Foerster submitted invoices to NOW LDEF for its out-of-pocket expenses and NOW reimbursed the firm for certain of those costs. Plaintiffs have also provided copies of those invoices which detail the expenses incurred by Morrison & Foerster.

Moreover, Mr. Bergin has submitted a supplemental declaration detailing Morrison & Foerster's practice of tracking litigation costs with automated monitoring systems and explaining that it is customary for the partner in charge of a case to review the out-of-pocket expenses to ensure that they are reasonable and accurate. The Court has reviewed these declarations and invoices and is satisfied that the amount of expenses requested by plaintiffs is reasonable in light of the protracted nature of this litigation and the extensive briefing required.

### CONCLUSION

Based on the foregoing, plaintiffs' motion for a supplemental award of attorneys' fees is granted.

Settle judgment on notice.

---

10. For example, Mr. Bergin, who graduated from law school in 1988 and worked on this case from 1993 to the present, had five years of experience when he began working on *Terry* and now has twelve years of experience. His average level of experience over the course of the litigation was 8.5 years. Mr. Bergin should, therefore, be compensated at the rate currently billed by attorneys with eight years of experience.